UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ANTHONY GIRARD MILLER,**

        **Plaintiff,**

-vs-                                                                Case No. 6:10-cv-1221-Orl-31KRS

**DONALD F. ESLINGER,**
**in his official capacity as Sheriff of Seminole**
**County, Florida**

        **Defendant.**

_____

# ORDER

      This cause comes before the Court without oral argument on a Motion for Summary Judgment (Doc. 47) filed by Defendant Donald F. Eslinger, in his official capacity as Sheriff of Seminole County, Florida (the "Sheriff's Dept."); the Response (Doc. 59) filed by Plaintiff Anthony Girard Miller ("Miller"); and the Defendant's Reply (Doc. 66).

**I. Background**

      The following facts are undisputed. In late 2007, Sergeant Andrew Watts of the Seminole County Sheriff's Office ("Sgt. Watts") learned that an individual named "George Cook" was attempting to have 500 grams of ephedrine (a key chemical used in the production of methamphetamine) shipped to an apartment located in Lake Mary, Florida. Sgt. Watts surveilled the apartment for the next month, eventually learning that the "George Cook" associated with that address was deceased. He suspected that an illegal methamphetamine lab was being run out of the apartment, so the decision was made to attempt to gain access through the use of a ruse. On December 3, 2007,

a postal inspector knocked on the front door of the apartment pretending to have a package for George Cook. An individual (the "Suspect") answered the door, and followed the inspector to his postal truck to pick up the package. After the Suspect signed the postal form with the name "George Cook," Sgt. Watts approached and identified himself. He asked the Suspect his name and told him about his suspicion that a "meth lab" was being run out of the apartment. The Suspect responded that his name was Anthony Miller, but denied that he was operating a meth lab.

Sgt. Watts and another agent obtained consent, and entered the apartment where they encountered two other individuals. They asked each person for a driver's license or an identification card to which the Suspect responded "that he had a New Mexico driver's license but lost it." (Doc. 60 at 36:5-6). Instead, the Suspect told Sgt. Watts his birthday, his cell phone number, and his social security number, which Sgt. Watts recorded on a notepad. (Doc. 60 at 55:2-6). In addition, Sgt. Watts recorded the Suspect's weight, height, eye and hair color, and that his place of birth was Albuquerque, New Mexico. *Id*. Satisfied with this information, Sgt. Watts never questioned the Suspect about the lost license, or attempt to obtain another form of identification from him.

A subsequent search of the apartment revealed that it was not a meth lab, but did contain more than twenty-eight grams of methamphetamine, cocaine residue, more than thirty-nine grams of cannabis, and various pieces of drug paraphernalia. The Suspect admitted that all the illegal substances were his, except for the ephedrine shipment. While he admitted to receiving the shipment, he intended to give it to a methamphetamine "cook" in Volusia County, Florida, in exchange for some

of the resulting product. In lieu of arrest for drug trafficking, the Suspect agreed to keep in contact with Sgt. Watts[1] and cooperate in locating the "cook."

Before he left the apartment that day, Sgt. Watts ran the Suspect's information through the "teletype" system[2] which confirmed that "Anthony Miller" had a valid New Mexico driver's license. (Doc. 60 at 18:7-25, 19:1-16, 47:21-25, 48:1-8). The next day Sgt. Watts ran the same information through the NCIC/FCIC law enforcement database which confirmed the valid driver's license for "Anthony Miller," an address in New Mexico, the date of birth, eye color, and social security number all of which matched the information the Suspect gave on scene. (Doc. 47. Ex. 5 & 6). Only two things did not match. Comparison of the database information and Sgt. Watts' notes reveal a forty-pound difference in weight, and a three-inch difference in height between the Suspect and "Anthony Miller." Sgt. Watts admits he never noticed the difference. *Id*.

Each of the next few days the Suspect phoned Sgt. Watts as promised, and accompanied him to the suspected meth lab in Volusia County. A few days later the Suspect stopped calling, so Sgt. Watts began drafting an affidavit to obtain an arrest warrant for "Anthony Miller."[3] In the affidavit, Sgt. Watts describes his first encounter with the Suspect at the apartment. Specifically, that an individual, "later identified as Anthony Miller," answered the door and provided Sgt. Watts with his date of birth; that he signed a postal form as "George Cook;" and that he had been out of contact for

---

[1] The Suspect agreed to call Sgt. Watts once each day.

[2] To access this system, a deputy must make a request to a dispatcher over the radio. The dispatcher responds verbally with information accessed through the NCIC/FCIC law enforcement database. (Doc. 60 at 17:18 - 18:23).

[3] Sgt. Watts attempted to contact the Suspect by calling and visiting his apartment.

several weeks after initially cooperating with an investigation. The warrant was issued on January 8, 2008. (Doc. 47, Ex. 1).

Almost eight months later, in October, 2008, Anthony Girard Miller was on his way home from work in Albuquerque, New Mexico when he was pulled over by the local sheriff's department. Unbeknownst to Mr. Miller, there was an outstanding warrant for his arrest issued by the Sheriff's Department in Seminole County, Florida. Consequently, rather than getting a ticket for a broken headlight, Mr. Miller was arrested and taken to the Metropolitan Detention Center in Albuquerque where he spent the next seventy-three days.[4] By the time he was released in January 2009, he lost his job as a mechanic, and his car and its contents were sold to pay the impound fees. It is now clear that Mr. Miller had done nothing wrong. Rather, he was the victim of identity theft. The Suspect's true identity remains unknown.

Miller filed the instant action in state court on July 15, 2010, alleging a violation of his Constitutional rights under 42 U.S.C. § 1983, and false arrest against Donald F. Eslinger, in his official capacity as Sheriff of Seminole County, Florida. The action was removed to this Court on August 16, 2010, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The Sheriff's Dept. now moves for summary judgment pursuant to FED. R. CIV. P. 56.

**II. Standards**

    **A. Summary Judgment**

A party is entitled to summary judgment when it can show that there is no genuine

---

[4] The Court notes that Miller was not arrested by the Seminole County Sheriff's Office, but by the Sheriff's Dept. in Albuquerque, New Mexico. Liability is based on the arrest warrant issued in Seminole County, Florida, pursuant to the affidavit of Sgt. Watts, Deputy Sheriff, employed by the Seminole County Sheriffs Office.

issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

**B. False Arrest**

Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV. An arrest is a seizure of the person. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007). An arrest without probable cause violates the Constitution and provides a basis for a Section 1983 claim, but the existence of probable cause at the time of the arrest constitutes an absolute bar to a Section 1983 action for false arrest. *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009). Whether a particular set of facts gives rise to probable cause or arguable cause for arrest depends on the elements of the crime. *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). In cases where a facially valid arrest warrant is issued, a judge has already determined that probable cause existed. Therefore, whether a Constitutional violation has occurred turns on whether the underlying affidavit was based on deliberate or reckless misstatements or is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1186 (M.D. Fla. 2008) (internal quotations omitted). Where the facts are undisputed, whether probable cause existed is a question of law. *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

**C. Municipal Liability**

A suit against a government official in their official capacity is treated as a suit against a municipality. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Palmer v. Johnson*, 2011 WL 307620 at *7 (M.D. Fla. 2011). Once a Constitutional violation is established, a plaintiff may be able to hold a municipality liable under certain circumstances. In *Monell v. Dept. of Soc. Servs. of New York*, the Supreme Court rejected the proposition that municipalities can be held liable under the doctrine of *respondeat superior*. 436 U.S. 658, 694 (1978). Instead, a Plaintiff is required to show that the Constitutional injury alleged was the result of a custom or policy. *Id.* Where no stated policy exists,

a Plaintiff must show that there was a pattern of deliberate indifference that is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997); *see also Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011). As a final alternative, a custom or policy may be inferred from a single decision, or ratification of a subordinate's decision, by the highest officials responsible for setting policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988).

**III. Analysis**

    **A. § 1983 False Arrest Claim**

Miller first argues that there is a disputed issue of material fact about whether the arrest warrant is facially valid. Despite his assertions to the contrary, this is a matter of law. *See, e.g., Booth v. Carvell*, 2009 WL 3233807 at *7 (E.D. Cal. 2009). The Fourth Amendment requires "that no warrants shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized." U.S. CONSTIT. amend IV. The arrest warrant issued in this case includes Mr. Miller's full name, his date of birth, weight, height, eye and hair color. (Doc. 47, Ex. 2). It states that it was issued pursuant to a sworn affidavit, specifies the alleged crime, and is consistent with the warrant requirements in FLA. R. CRIM. P. 3.121. *Id*. Miller points out that there was a forty-pound difference in weight and a three-inch difference in height between the Suspect and Mr. Miller, but such a minor inaccuracy does not invalidate an otherwise valid arrest warrant.

Next Miller argues that there is a disputed issue of material fact as to whether there was probable cause to arrest him.[5] When the underlying facts are undisputed, the existence of probable cause is a matter of law. *Marx,* 905 F.2d at 1506. Accordingly, the Court now turns to whether the warrant was supported by probable cause. Police are allowed to make reasonable mistakes of fact. Thus, "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802-3 (1971); *Rodriguez v. Farrell*, 280 F.3d 1341, 1345-46 (11th Cir. 2002) (noting that the "reasonable mistake" standard in *Hill* applies (1) in the context of a section 1983 action and (2) when the police have a valid warrant–as opposed to just probable cause–to arrest someone, but mistakenly arrest someone else due to a misidentification). Unless Miller can show that the affidavit in this case is "so lacking in probable cause" to make belief in it unreasonable, *Drudge,* 581 F. Supp. 2d at 1186, he must demonstrate that it was based on misstatements or omissions made intentionally, or with reckless disregard for the truth. *United States v. Williams*, 146 Fed. App'x 425, 430 (11th Cir. 2005); *United States v. Kirk*, 781 F.2d 1498, 1502 (11th Cir. 1986) (citing *Franks v. Deleware*, 438 U.S. 154 (1978)). Further, even if a plaintiff can show that the affidavit was based on such misstatements, the warrant will still be valid if probable cause exists absent those misstatements.[6] *Williams*, 146 Fed. App'x at 430.

---

[5] Miller's only basis for this contention is that a "reasonable officer" would have included more information in the affidavit. *See infra*, note 7.

[6] In the case of an omission, the court looks to whether probable cause would have existed had the statements been included.

Miller points to one misstatement and three omissions that he claims would have negated probable cause. First he claims that Sgt. Watts "inaccurately makes it appear that Anthony Miller was later identified" by stating in the affidavit: "a male, later identified as Anthony Miller (dob XXX, 1961)." (Doc. 59 at 7). Second, Miller claims that Sgt. Watts should not have omitted, (1) the "[S]uspect's story of his allegedly lost driver's license;" (2) that the Suspect "never produced a wallet, photograph, credit card, check cashing card or anything confirming his identity;" and (3) that weight and height differences existed between the Suspect and the law enforcement database search. (Doc. 59 at 7-9). The Sheriff's Dept. points out that while the affiant must be truthful,

> This does not mean 'truthful' in the sense that ever fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay . . . as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true. *Franks v. Delaware*, 438 U.S. 154, 165 (1978).

Miller presents no evidence to suggest that Sgt. Watts intentionally or recklessly misstated or omitted anything.[7] Sgt. Watts' oversight of the height and weight variance may have been a mistake, but it

---

[7] At trial, Miller claims that he will contest the veracity of Sgt. Watts' deposition. (Doc. 59 at 7). First, the Court notes that this is not a disputed issue of material fact because Miller points to no evidence to contradict Sgt. Watts' testimony. Instead, Miller cites *Kingsland v. City of Miami* for the proposition that an interested officer's purported memory cannot be the sole factor in determining the existence of probable cause. 382 F.3d 1220, 1228 (11th Cir. 2004). That case is inapplicable for two principle reasons: (1) in *Kingsland*, the officer was "interested" because the incident in question involved the alleged wrongdoing of another officer. The court specifically noted that it was a "unique and exceptional case." *Id*. (2) The plaintiff in *Kingsland* produced evidence which contradicted the officer's statements. *Id*. In this case, Miller relies solely on the deposition of Donald Pullease, a "criminal justice expert," whose claims amount to nothing more than legal conclusions about what a "reasonable officer" would have done in this situation. (Doc. 59, Ex. G). Not only is it a legal conclusion unsupported by facts, but it is a mischaracterization of the legal standard. Whether a "reasonable officer" would have done things differently is irrelevant. Courts have consistently refused to hold police officers liable for mere negligence in a variety of cases. *See, e.g., Davis v. United States*, 131 S.Ct. 2419, 2428 (2011).

was at most, only a negligence mistake.[8] Finally, even if the affidavit included a perfect iteration of the facts as Miller sees them, it would still have supported a finding of probable cause in this case.[9]

The remainder of Miller's arguments relate to the policy or custom of the Seminole County Sheriff's Office regarding informants. Since the Court finds that Miller suffered no Constitutional injury, there is no need to reach the issue of municipal liability. Accordingly, the Court finds that there is no genuine issue of material fact. The Sheriff's Dept. is entitled to judgment as a matter of law as to the § 1983 claims alleged in Count II.[10]

### B. State Law False Arrest/Imprisonment Claim

Since the Court will grant summary judgment on the § 1983 claim, the next issue is whether it should still entertain the state law claim under 28 U.S.C. § 1367. Section 1367(c) allows a court to decline jurisdiction over a supplemental state claim if: (1) the supplemental claim raises a novel or complex issue of state law, (2) it substantially predominates over the federal claim, (3) the court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there

---

[8] Weight is not a static number; it is completely reasonable for Sgt. Watts to ignore a difference of forty pounds. Height is a static number, but a difference of only three-inches is not enough to suggest, by itself, that Sgt. Watts knew the Suspect was lying about his identity. Looking at all inferences drawn from the facts in a light most favorable to Miller, there is no evidence that Sgt. Watts omitted this information intentionally or with reckless disregard for the truth.

[9] In fact, the judge who issued the warrant in this case testified at deposition that it would not have changed her determination that there was probable cause to issue the warrant. (Doc. 51 at 10:1-25).

[10] Miller also alleges a violation of the Equal Protection clause of the Fourteenth Amendment. However, he provides no facts or arguments to support this claim. Upon review, the Court finds no allegations supporting a claim for a Constitutional violation under the Equal Protection clause of the Fourteenth Amendment. Consequently, the Sheriff's Dept. is entitled to a judgment as a matter of law to extent Miller makes such claims.

are other compelling reasons for declining jurisdiction. The Sheriff's Dept. argues that state and federal claims are based on the same issues, and there is no novel issue of state law. As such, it argues the interests of judicial comity and efficiency require consideration of the state claim. (Doc 47, at 22). The Court agrees.

In Florida, the tort of false imprisonment and false arrest are virtually identical. *Ranking v. Evans*, 133 F.3d 1425, 1431 n.5 (11th Cir. 1998). An arrest pursuant to a valid warrant, based on probable cause, is an affirmative defense to a false arrest claim. *Card v. Miami-Dade Cnty. Fla.*, 147 F. Supp. 2d 1334, 1347 (S.D. Fla. 2001) (citing *Jackson v. Navarro*, 665 So.2d 340, 342 (Fla. 4th DCA 1995)). The Court concludes that Miller's state law claims for false arrest and imprisonment must fail for the same reason as his § 1983 claim: he was arrested pursuant to a valid warrant, supported by probable cause. *See Jackson*, 665 So. 2d at 342. Therefore, there is no genuine dispute of material fact and the Sheriff's Dept. is entitled to judgment as a matter of law on Plaintiff's state law false arrest and false imprisonment claim.

**IV. Conclusion**

What happened to Mr. Miller in this case is regrettable, but not every improper deprivation of liberty amounts to a Constitutional violation. *Card*, 147 F.Supp 2d at 1347; *Drudge,* 581 F. Supp. 2d at 1196. There is no disputed issue of material fact in this case, and no evidence from which a jury could reasonably find that Mr. Miller's Constitutional rights were violated.

In light of the foregoing, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 47) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendant, Donald F. Eslinger, in his official capacity as Sheriff of Seminole County, Florida, and against Plaintiff, Anthony Girard Miller, on all counts in the Complaint and to thereafter close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 26, 2011.

Copies furnished to:

Counsel of Record
Unrepresented Party

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**